# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

LUCAS VELEZ, individually and on behalf of a class of others similarly situated,

        **Plaintiffs,**

   v.

TOYOTA MOTOR SALES, U.S.A., INC., TOYOTA MOTOR NORTH AMERICA, INC., and COUNTYLINE AUTO CENTER, INC. a/k/a LEXUS OF NORTH MIAMI,

        **Defendants.**

Civil Action No. _____

**CLASS ACTION COMPLAINT FOR:**
 **(1) VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
 **(2) UNJUST ENRICHMENT**
 **(3) FRAUDULENT MISREPRESENTATION**
 **(4) NEGLIGENT MISREPRESENTATION**
 **(5) VIOLATION OF MISLEADING ADVERTISING STATUTE (§ 817.41, FLA. STAT.)**
 **(6) BREACH OF IMPLIED WARRANTY OF FITNESS FOR PARTICULAR PURPOSE**
 **(7) BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
 **(8) BREACH OF EXPRESS WARRANTY**
 **(9) VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT (15 U.S.C. §2301 ET SEQ.)**

**<u>JURY TRIAL DEMANDED</u>**

1

Plaintiffs LUCAS VELEZ ("Plaintiff") brings this action, on behalf of himself and all others similarly situated, against defendants TOYOTA MOTOR SALES, U.S.A., INC. ("Toyota Motor Sales"), TOYOTA MOTOR NORTH AMERICA, INC. ("TMNA," and, collectively with Toyota Sales, "Toyota"), and COUNTYLINE AUTO CENTER, INC. a/k/a LEXUS OF NORTH MIAMI ("LONM," and, collectively with Toyota, "Defendants") and alleges, based upon Plaintiff's personal knowledge, the investigation of counsel, and information and belief, as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff brings this class action individually and on behalf of a Class of similarly situated individuals (members of the Class, as further defined below, referred to collectively as "Class Members") who purchased and/or leased a Lexus GX 460 SUV.

2.      Defendants are aware that an integral component that is necessary to utilize the towing capabilities of Lexus GX 460 SUVs (the tow hitch receiver) is no longer in production and not available to the consumers who purchase and/or lease Lexus GX 460 SUVs.

3.      Nonetheless, Defendants have knowingly continued to tout and advertise the rugged nature and towing capabilities of the 2022 Lexus GX 460 SUV without reference to the unavailability of the tow hitch receiver.

4.      Defendants have sold and continue to sell Lexus GX 460 SUVs to consumers, including Plaintiff and the Class Members, who have relied on the advertisements, statements, and representations concerning the towing capabilities of the Lexus GX 460 SUV without informing such consumers prior to their purchase or lease that the Lexus GX 460 SUV is rendered incapable of towing anything due to the unavailability of the tow hitch receiver.

5.      Accordingly, Plaintiff, on behalf of himself and the Class Members, bring these claims against Defendants for (i) Violation of the Florida Deceptive and Unfair Trade Practices Act; (ii) Unjust Enrichment; (iii) Fraudulent Misrepresentation; (iv) Negligent Misrepresentation; (v) Violation of the Misleading Advertising Statute (§ 817.41, Fla. Stat.); (vi) Breach of Implied Warranty of Fitness for Particular Purpose; (vii) Breach of Implied Warranty of Merchantability; (viii) Breach of Express Warranty; and (ix) Violation of the Magnuson-Moss Warranty Act  (15 U.S.C. ch. 50 § 2301 et seq).

## PARTIES

6.      Plaintiff is a natural person that resides in Miami Dade County, Florida.

7.     Defendant Toyota Motor Sales is a California corporation, with its principal place of business at 6565 Headquarters Drive, Plano, TX 75024. On information and belief, Toyota Motor Sales manufactures, distributes, markets, and sells vehicles in the United States, including, without limitation, Lexus branded vehicles. Toyota Motor Sales can be served through its registered agent, CT Corporation System, located at 1200 South Pine Island Road, Plantation, FL 33324.

8.     Defendant TMNA is a California corporation, with its principal place of business at 6565 Headquarters Drive, Plano, TX 75024. On information and belief, TMNA is a holding company for Toyota Motor Corporation's sales and manufacturing subsidiaries in the United States, including, without limitation, Toyota Motor Sales. TMNA can be served through its registered agent, CT Corporation System, located at 1200 South Pine Island Road, Plantation, FL 33324.

9.     Defendant LONM is a Florida corporation, with its principal place of business at 16150 Pines Boulevard, Pembroke Pines, FL 33024. LONM markets, distributes, leases, and sells vehicles in the State of Florida on behalf of itself and/or Toyota, including, without limitation, Lexus branded vehicles. LONM can be served through its registered agent, Alan N. Jockers, located at 1841 N. State Rd 7, Hollywood, FL 33021. Defendant LONM is Toyota's authorized and actual agent regarding sales, distribution, repairs and maintenance of Lexus vehicles, including those subject to the allegations herein.

10.    At all times material hereto, the employees, agents, and/or representatives of LONM were acting in the scope of their agency and/or employment under LONM and for the benefit of LONM.

11.    At all times material hereto, the employees, agents, and/or representatives of Toyota were acting in the scope of their agency and/or employment under Toyota and for the benefit of Toyota.

## JURISDICTION AND VENUE

12.    This is a class action under Rule 23 of the Federal Rules of Civil Procedure.

13.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 2310.

14.    The Court has personal jurisdiction over Defendants because they purposefully direct their activities at residents of Florida and the litigation results from injuries that arise out of or relate to those activities.

15.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the subject claims have occurred in this district.

## STATEMENT OF FACTS

16.    Plaintiff was in the market for a rugged vehicle that had towing capabilities which would afford Plaintiff the ability to tow various loads, including, without limitation, a jet ski, a motorcycle, and a U-Haul trailer.

17.    In order for a vehicle to have sufficient towing capabilities, it must have a component attached to the chassis of the vehicle known as a tow hitch receiver.

18.    Based on advertisements distributed by Defendants, Plaintiff learned that the Lexus GX 460 Sport Utility Vehicle ("SUV") seemed like a rugged, robust vehicle with significant towing capabilities, and thus a viable option.

19.    Toyota advertised (and continues to advertise) the Lexus GX 460 SUV as a "rugged SUV," the "ONLY STANDARD 4WD [*i.e.,* four-wheel drive] IN ITS CLASS," with a system that "directs power to all four wheels—all of the time."[1]

20.    Toyota further advertised (and continues to advertise) the Lexus GX 460 SUV as having "TORSEN® LIMITED-SLIP CENTER DIFFERENTIAL," described by the following: "Full-time four-wheel drive helps give the GX better traction on-road and off. While the Torsen®* torque-sensing limited-slip center differential more efficiently distributes engine power between the front and rear axles to optimize traction even further."[2]

---

[1] https://www.lexus.com/models/GX (last visited January 6, 2023)
[2] *Id.*

21.     Toyota further advertised (and continues to advertise) the Lexus GX 460 SUV as having a "6,500-LB TOWING CAPACITY" with "329 lb-ft of torque at low rpm [that] enables the GX to tow up to 6,500 lb" with "Trailer Sway Control [that] adds peace of mind as part of the Vehicle Stability Control system," that allows for "braking [to be] applied independently to each wheel" to help reduce sway.[3]

22.     In addition, LONM posted a "window sticker" for the Lexus GX 460 SUV on its website (which, upon information and belief, was created by Toyota) that stated the Lexus GX 460 SUV had standard powertrain features of features of "4.6-Liter V8 Engine w/301 HP," "6-Speed Automatic Transmission," "Full-Time Four Wheel Drive," and "Trailer Sway Control."

23.     Accordingly, Plaintiff contacted defendant LONM to discuss the potential acquisition of a 2022 Lexus GX 460 SUV.

24.     LONM's representative(s) confirmed to Plaintiff that, indeed, the 2022 Lexus GX 460 SUV had towing capabilities.

25.     LONM's representative(s) was/were aware that one of Plaintiff's prerequisites for the purchase of a vehicle was that the vehicle to be purchased was capable of towing, and thus had an available tow hitch receiver.

26.     LONM's representative, Tyrie Yansen, gave Plaintiff a verbal quote for the cost of the tow hitch and installation and confirmed to Plaintiff that Plaintiff

---

[3] *Id.*

could have a tow hitch receiver (identified more specifically as Tow Hitch Receiver, Class IV, part # PT228-60140) (the "Tow Hitch Receiver") installed on a 2022 Lexus GX 460 SUV.

27.    In addition, LONM's representative(s) emailed Plaintiff a specification sheet (also called a spec sheet) originally produced by Toyota that detailed the specifications of the 2022 Lexus GX 460 SUV, which listed "Full-time four-wheel drive with Torsen® limited-slip center differential with electronic differential lock" and "Trailer-Sway Control" as standard features of the 2022 Lexus GX 460, which further confirmed to Plaintiff that the 2022 Lexus GX 460 SUV had sufficient towing capabilities.

28.    Neither communications/advertisements from Toyota nor LONM's representative(s) indicated in any way that Plaintiff would be unable to purchase a Tow Hitch Receiver for his vehicle, should he decide to purchase one.

29.    Accordingly, on or about March 9, 2022, Plaintiff purchased a 2022 Lexus GX 460 SUV, identified with the vehicle identification number ("VIN") JTJAM7BX1N5319569 (hereinafter referred to as the "Lexus SUV").

30.    Plaintiff purchased the Lexus SUV from LONM on the basis of (i) the representations made by Toyota concerning the Lexus SUV's towing capabilities, and (ii) the representations made by LONM concerning the Lexus SUV's towing capabilities and installation of the Tow Hitch Receiver on the Vehicle.

31.   On the day after Plaintiff purchased the Lexus SUV, Plaintiff brought the Lexus SUV back to the premises of LONM to have the Tow Hitch Receiver installed on the Lexus SUV, but LONM's representative(s) informed Plaintiff that the Tow Hitch Receiver was not available.

32.   Plaintiff followed up with LONM multiple times (including, without limitation, a physical visit on or about April 14, 2022) in an attempt to obtain the model of Tow Hitch Receiver needed for the Lexus SUV but was continuously advised by LONM's representative(s) that the part was not available and/or discontinued.

33.   Further, subsequent to Plaintiff's purchase of the Lexus SUV, LONM's representative(s) advised Plaintiff that there was a stop-sale order issued in connection to the model of Tow Hitch Receiver needed for the Lexus SUV.

34.   A stop-sale order is a notification issued by a manufacturer to its dealers or resellers instructing that certain inventory should not be sold.

35.   Upon information and belief, the stop-sale order concerning the Tow Hitch Receiver was issued directly by Toyota.

36.   Upon information and belief, the stop-sale order concerning the Tow Hitch Receiver was issued in 2021, at least a number of months before Plaintiff purchased the Lexus SUV.

37.     This means that, not only did Toyota know of the unavailability of the Tow Hitch Receiver (which rendered the Lexus GX 460 line of SUVs incapable of towing anything), but Toyota issued an order instructing that the Tow Hitch Receiver should not be sold, thus actively curtailing the sale of any Tow Hitch Receivers that remained on the market.

38.     Alternatively, the stop-sale order was issued by Toyota's affiliate or subsidiary, and Toyota knew or should have known about the existence of the stop-sale order.

39.     Plaintiff eventually called Toyota's customer service department, who provided Plaintiff with a case number (#221021001754) and advised Plaintiff that the Tow Hitch Receiver would be available at the end of November 2022.

40.     However, as of the date of this complaint, the Tow Hitch Receiver is still not available.

41.     Toyota knows/knew that the Tow Hitch Receiver is necessary to utilize the towing capabilities of the Lexus GX 460 line of SUVs.

42.     Toyota also knows the Towing Hitch Receiver is unavailable and knew the Towing Hitch Receiver was unavailable since the date it became unavailable.

43.     Despite knowing the Lexus GX 460 line of SUVs was and still is incapable of towing anything due to the unavailability of the Tow Hitch Receiver (which it may have actively contributed to by way of a stop-sale order), Toyota

continued (and still continues) to advertise and represent on a national level that the Lexus GX 460 line of SUVs has significant towing capabilities.

44.    For example, as of January 5, 2023, Toyota is still advertising that the Lexus GX 460 line of SUVs have a "6,500-LB TOWING CAPACITY" with "329 lb-ft of torque at low rpm [that] enables the GX to tow up to 6,500 lb" with "Trailer Sway Control [that] adds peace of mind as part of the Vehicle Stability Control system," that allows for "braking [to be] applied independently to each wheel" to help reduce sway.[4]

45.    At the same time, Toyota's website that lists the Tow Hitch Receiver for sale states "This Product Is No Longer Available."[5]

46.    Indeed, it appears that Toyota's website page listing the Tow Hitch Receiver has stated "This Product Is No Longer Available" as far back as October 18, 2021.[6]

47.    Likewise, LONM knows/knew the Tow Hitch Receiver is necessary to utilize the towing capabilities of the Lexus GX 460 line of SUVs.

---

[4] *Id.*
[5] *See* https://parts.lexus.com/p/Lexus__/Tow-Hitch-Receiver/69522969/PT22860140.html (last visited January 6, 2023).
[6] *See, e.g.,* the cached version of the webpage, accessible by way of the Internet Archive WayBack Machine (which provides publicly accessible web archiving records) located at https://web.archive.org/web/20211018052924/https://parts.lexus.com/p/Lexus__/Tow-Hitch-Receiver/69522969/PT22860140.html (last visited January 6, 2023).

48.     LONM also knows the Towing Hitch Receiver is unavailable and knew the Towing Hitch Receiver was unavailable since the date it became unavailable.

49.     Despite knowing the Lexus GX 460 line of vehicles was and is incapable of towing anything due to the unavailability of the Tow Hitch Receiver, LONM continued (and still continues) to advertise and represent that the Lexus GX 460 line of vehicles has towing capabilities.

50.     For instance, LOMN still posts "window stickers" for the Lexus GX 460 SUV (which, upon information and belief, are created by Toyota) on its website that state the Lexus GX 460 SUV had standard powertrain features of features of "4.6-Liter V8 Engine w/301 HP," "6-Speed Automatic Transmission," "Full-Time Four Wheel Drive," and "Trailer Sway Control."[7]

51.     Further, representative(s) of LONM made representations directly to Plaintiff before, during, and after Plaintiff purchased the Lexus SUV that confirmed the Lexus SUV would be tow-capable after installation of the Tow Hitch Receiver.

52.     Such representations were made to Plaintiff after the date LONM was made aware that the Towing Hitch Receiver was unavailable, discontinued, and/or subject to a stop sale order.

---

[7] *See, e.g.,* https://www.lexusofnorthmiami.com/dealer-inspire-inventory/window-stickers/lexus?vin=JTJAM7BX0P5345972 (last visited January 6, 2023).

53.     Based on Defendants' representations, Plaintiff was under the impression that the Lexus SUV would be tow-capable.

54.     Plaintiff purchased the Lexus SUV on the basis of Defendants' representations that the Lexus SUV would be tow-capable.

55.     Rather than actively advertise and represent that the Lexus GX 460 line of SUVs are capable of towing, Toyota should have disclosed to consumers, and directed its dealers to disclose to consumers, that the Lexus GX 460 line of SUVs are incapable of towing due to the unavailability of the Tow Hitch Receiver.

56.     Likewise, rather than actively advertise and represent that the Lexus GX 460 line of SUVs are capable of towing, LONM should have disclosed to consumers that the Lexus GX 460 line of SUVs are incapable of towing due to the unavailability of the Tow Hitch Receiver.

57.     The fact that the Lexus GX 460 line of SUVs are incapable of towing due to the unavailability of the Tow Hitch Receiver is a material fact, because a reasonable consumer would likely consider it important to know, when purchasing or leasing a vehicle that is advertised as a "rugged SUV" with significant towing capabilities, that the vehicle is incapable of towing.

58.     Further, the fact that the Lexus GX 460 line of SUVs are incapable of towing due to the unavailability of the Tow Hitch Receiver is a material fact because a reasonable consumer would likely be induced to change his or her decision to

purchase or lease a vehicle that is advertised as a "rugged SUV" with significant towing capabilities based on knowing that the vehicle is incapable of towing.

59.     Although Defendants have known that the Lexus GX 460 line of SUVs are defective (as they are incapable of towing due to the unavailability of the Tow Hitch Receiver) since at least October 18, 2021, if not earlier, Defendants failed to inform Plaintiff and the Class Members of this defect prior to their respective purchases or leases of Lexus GX 460 SUVs and has failed to repair Plaintiff's and Class Members' SUVs to alleviate the defect.

60.     In particular, Defendants should have disclosed to Plaintiff and the Class Members that the Lexus GX 460 line of SUVs are incapable of towing due to the unavailability of the Tow Hitch Receiver.

61.     By failing to make adequate disclosures on its webpages or other materials provided to consumers (and additionally, in the case of Toyota, by failing to direct its dealers to make these disclosures), Defendants prevented consumers from learning about the unavailability of the Tow Hitch Receiver prior to their purchases or leases.

62.     Rather than make adequate disclosures on its webpages or other materials provided to consumers (and additionally, in the case of Toyota, rather than direct its dealers to make these disclosures), Defendants continue to advertise and represent that the Lexus GX 460 line of SUVs are rugged SUVs fully capable of a

significant towing capacity, thus misleading consumers until after they have purchased a Lexus GX 460 SUV and learn that it is not capable of towing anything due to the unavailability of the Tow Hitch Receiver.

63.    Plaintiff and Class Members have thus been damaged by Defendants' conduct and omissions because they purchased or leased an SUV of a quality different than promised.

64.    Because of the undisclosed defect, the Lexus GX 460 SUVs purchased by each of the Class Members (including, without limitation, Plaintiff's Lexus SUV) are worth less than what each of the Class Members (including, without limitation, Plaintiff) actually paid for it, as the market value of an SUV with functional (and significant) towing capabilities is higher than the market value of an otherwise identical SUV that does not have functional towing capabilities.

65.    The respective purchases and/or leases of the Lexus GX 460 SUVs purchased and/or leased by Plaintiff and the Class Members were accompanied by warranties, both express and implied.

66.    While non-genuine alternatives to the Tow Hitch Receiver may be available somewhere in the automotive market, the warranties that are applicable to Lexus GX 460 SUVs do not cover any damage or failures resulting directly or indirectly from the installation of non-genuine Lexus accessories or parts, while they

do cover damage or failures resulting directly or indirectly from the installation of genuine Lexus accessories or parts.

67.     In addition, under the terms of the applicable warranties, installation of non-genuine Lexus accessories or parts is considered alteration of the vehicle and/or tampering with the vehicle.

68.     Further, installation of non-genuine Lexus accessories or parts would void the otherwise applicable warranties.

69.     Even further, non-genuine Lexus accessories or parts that would serve as a replacement for the Tow Hitch Receiver would not allow Lexus GX 460 SUVs to tow to their full capacity, and would only allow for a limited towing capacity.

70.     Thus, purchasers of Lexus GX 460 SUVs, such as Plaintiff and the Class Members, are faced with a lose-lose decision: either forgo the advertised towing capabilities of their newly-owned SUV and accept an SUV with less value than had it been tow-capable, or else seek out a replacement, non-genuine Lexus accessory or part and risk losing out on and/or voiding otherwise applicable warranty coverage.

71.     Plaintiff gave notice of the issues with the Lexus SUV, as well as a final opportunity to repair the Lexus SUV, to Defendants before the expiration of the applicable warranties and within the warranty period after the date of delivery of the Lexus SUV to Plaintiff prior to filing this lawsuit.

**Defendant's Practices Violated Established and Accepted Ethical Standards**

72.     Toyota Motor Corporation (the international umbrella corporation to which Toyota is a subsidiary) maintains a "Code of Conduct," which "describes the values and methods" meant to be followed by Toyota Motor Corporation and its various affiliates and subsidiaries, including Toyota and LMNO.

73.     Toyota's Code of Conduct calls for its affiliates and subsidiaries, including Toyota and LMNO, to "act, at all times, including when carrying out our works, in a manner that does not provoke unnecessary misunderstanding or misapprehensions, and to act with humility, honesty, and integrity."[8]

74.     However, Defendants' practice of selling or leasing SUVs incapable of towing without disclosing such defect to consumers prior to the time of sale or lease, as alleged herein, is in blatant contradiction the requirements outlined in Toyota's Code of Conduct.

75.     Further, Defendants' practice of selling or leasing SUVs incapable of towing without disclosing to consumers such defect prior to the time of sale or lease, as alleged herein, violates generally accepted ethical principles of business conduct.

76.     The Data & Marketing Association (formerly the Direct Marketing Association) (the "DMA"), the leading industry association for companies that, like

---

[8] *See* https://global.toyota/pages/global_toyota/company/vision-and-philosophy/code_of_conduct_001_en.pdf (last visited January 5, 2023), at p. 15 (the terms of which are hereby incorporated herein).

Toyota and LMNO, market directly to consumers, has published principles of ethical business practices (the "Ethical Guidelines").

77.    In May of 2018, the DMA was acquired by the Association of National Advertisers (the "ANA"), "one of the oldest and most venerated trade association in the marketing industry."[9]

78.    ANA adopted the DMA's Ethical Guidelines, which it publishes on its web site as "ANA Accountability - Guidelines for Ethical Business Practice (as developed by DMA)."

79.    A true and correct copy of Ethical Guidelines that the ANA adopted from the DMA can be found at https://www.ana.net/getfile/30491 (last visited January 6, 2023), and is hereby incorporated herein by reference.

80.    Because Toyota is a member of the ANA,[10] Toyota ascribes to the ANA's member principles (including the Ethical Guidelines that ANA adopted from DMA) for both itself, its affiliates, and its subsidiaries.

81.    The Ethical Guidelines "are intended to provide individuals and organizations involved in data-driven marketing in all media with generally accepted principles of conduct." Ethical Guidelines at p. 3.

---

[9] https://www.ana.net/content/show/id/49074 (last visited January 6, 2023).
[10] https://www.ana.net/members/list#t (last visited January 6, 2023).

82.     Part II of the Ethical Guidelines, titled "Marketing," is set forth in a series of "Articles," each of which states a separate ethical principle related to marketing (the "Ethical Guidelines for Marketing").

83.     Article #1 of the Ethical Guidelines for Marketing is "HONESTY AND CLARITY OF OFFER," which states the following: "All offers should be clear, honest and complete so that the consumer may know the exact nature of what is being offered . . .  [a]dvertisements or specific claims that are untrue, misleading, deceptive, or fraudulent should not be used." Ethical Guidelines at p. 16.

84.     By marketing the Lexus GX 460 line of SUVs as having significant tow capabilities without notifying potential purchasers or lessees that the Lexus GX 460 line of SUVs are incapable of towing due to the unavailability of the Tow Hitch Receiver prior to their purchase or lease, Defendants violated this principle because their offer was not clear, honest and complete, but rather untrue, misleading, deceptive, or fraudulent.

85.     Article #2 of Ethical Guidelines for Marketing is "ACCURACY AND CONSISTENCY," which states: "Simple and consistent statements or representations of all the essential points of the offer should appear in the promotional material. The overall impression of an offer should not be contradicted by individual statements, representations, or disclaimers." *Id.*

86.     By not including any information indicating the Lexus GX 460 line of SUVs are incapable of towing due to the unavailability of the Tow Hitch Receiver in material that it made available to consumers prior to their purchases or leases of Lexus GX 460 SUVs, Defendants violated the ethical principle in Article #2 of the Ethical Guidelines for Marketing because the information Defendants provided to such consumers did not contain all the essential points of the offer.

87.     Defendants omitted that the Lexus GX 460 line of SUVs are incapable of towing due to the unavailability of the Tow Hitch Receiver, and only chose to inform to inform purchasers or lessees of this fact until after they had purchased or leased their Lexus GX 460 SUVs.

88.     Further, Defendants have violated the ethical guidelines set forth by the American Marketing Association (the "AMA") in its "Statement of Ethics."

89.     A true and correct copy of the AMA Statement of Ethics can be found at   https://myama.my.site.com/s/article/AMA-Statement-of-Ethics   (last   visited January 6, 2023) and is hereby incorporated herein by reference.

90.     Upon information and belief, Toyota is a member of the AMA, as, at the very least, Toyota Motor Sales maintains an active presence on the AMA's job boards.[11]

---

[11] *See, e.g.,* https://jobs.ama.org/profile/toyota-motor-sales/122370/ (last visited January 6, 2023).

91.     Accordingly, Toyota ascribes to the Statement of Ethics for both itself, its affiliates, and its subsidiaries.

92.     The AMA "commits itself to promoting the highest standard of professional ethical norms and values for its members." *See* Statement of Ethics.

93.     The AMA Statement of Ethics states that "marketers are expected to embrace the highest professional ethical norms and the ethical values implied by our responsibility toward multiple stakeholders (e.g., customers . . . .)." *Id*.

94.     Thus, the Statement of Ethics contains "Ethical Norms," which "are established standards of conduct that are expected and maintained by society and/or professional organizations." *Id*.

95.     The AMA's Ethical Norms state that marketers must "consciously avoid [] harmful actions and omissions," "striv[e] for good faith and fair dealing," "avoid [] deception in . . . pricing, communication, and delivery of distribution," and affirm "core values" of honesty, . . . fairness [and] transparency." *Id.*

96.     By failing to include any information about the fact that Lexus GX 460 SUVs are incapable of towing due to the unavailability of the Tow Hitch Receiver in, Defendants violated these Ethical Norms because, among other reasons, they did not strive (or achieve) good faith and fair dealing, did not avoid deception in communication, and did not affirm the core values of honesty, fairness and transparency.

97.    The AMA has also published "Ethical Values," which "represent the collective conception of what communities find desirable, important and morally proper." *Id*.

98.    The AMA states that marketers' Ethical Values include honesty, meaning "[s]triv[ing] to be truthful in all situations and at all times" and "[h]onoring our explicit and implicit commitments and promises." *Id*.

99.    Another Ethical Value, according to the AMA, is fairness, which includes "[r]epresent[ing] products in a clear way in selling, advertising and other forms of communication," "avoid[ing] false, misleading and deceptive promotion," and "[r]efusing to engage in 'bait-and-switch' tactics." *Id*.

100.    Yet another Ethical Value, according to the AMA, is "Transparency," which includes "[s]triv[ing] to communicate clearly with all constituencies." *Id*.

101.    By failing to include any information about the fact that Lexus GX 460 SUVSs are incapable of towing due to the unavailability of the Tow Hitch Receiver in material and/or representations that they conveyed to consumers prior to their purchases or leases of Lexus GX 460 SUVs, Defendants violated these Ethical Values, because, among other reasons, they were not truthful in all situations, did not honor their explicit and implicit commitments and promises, did not represent their products in a clear way, did not avoid false, misleading and deceptive promotion, and did not communicate clearly.

102.   In fact, by failing to include any information about the fact that Lexus GX 460 SUVS are incapable of towing due to the unavailability of the Tow Hitch Receiver in material and/or representations that they conveyed to consumers prior to their purchases or leases of Lexus GX 460 SUVs, Defendants actively engaged in bait-and-switch tactics against such consumers.

## CLASS REPRESENTATION ALLEGATIONS

103.   Plaintiff brings this action on his own behalf and as a class action on behalf of all similarly situated purchasers and lessees of Lexus GX 460 SUVs, pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3). Issues in this litigation are also properly maintainable pursuant to Fed. R. Civ. P. 23(c)(4).

104.   Specifically, Plaintiff seeks to represent the following Class (the "Class"):

> All persons located within the State of Florida who, within the applicable period of limitations preceding the filing of this lawsuit to the date of class certification, purchased or leased a Lexus GX 460 SUV from an authorized Toyota dealership that was delivered to such persons without a Tow Hitch Receiver, Class IV, part # PT228-60140.

105.   Excluded from the Class definition are: (1) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (2) officers, directors and employees of Defendants; (3) any entity in which Defendants have a controlling interest, to include, but not limited to, their legal representative, heirs,

and successors; (4) counsel and members of the immediate families of counsel for Plaintiff herein; and (5) the judge presiding over this action and any member of the judge's immediate family.

106.   Plaintiff also seeks to represent a subclass of all Class Members who purchased or leased Lexus GX 460 SUV (the "Subclass").

107.   Specifically, Plaintiff seeks to represent the following Subclass:

All persons located within the State of Florida who, within the applicable period of limitations preceding the filing of this lawsuit to the date of class certification, purchased or leased a Lexus GX 460 SUV from COUNTYLINE AUTO CENTER, INC. a/k/a LEXUS OF NORTH MIAMI that was delivered to such persons without a Tow Hitch Receiver, Class IV, part # PT228-60140.

108.   Plaintiff reserves the right to re-define the Class and/or Subclass prior to class certification.

109.   **Numerosity**. The members of the proposed Class are so numerous that joinder of all members is impracticable. The precise number of Class Members is unknown at this time, as such information is in the exclusive control of Defendants. Upon information and belief, however, and based on Defendant's market share and the number of vehicles sold or leased in the State of Florida each year, Plaintiff estimates that the Class is comprised of (at minimum) thousands of members. As such, numerosity within the meaning of Rule 23(a)(1) is established.

110.   **Typicality**. The claims of Plaintiff are typical of the claims of the Class in that:

a.  Plaintiff and the Class Members all purchased or leased Lexus GX 460
SUVs from Toyota and/or a Toyota authorized dealership (including,
in the case of the Subclass, from LMNO);

b.  The Lexus GX 460 SUVs purchased by Plaintiff and the Class
Members were all advertised by Toyota (and, in the case of the
Subclass, advertised by all Defendants) as having significant towing
capabilities;

c.  Plaintiff and the Class Members were subject to the same or
substantially similar circumstances in which Toyota (and, in the case of
the Subclass, all Defendants) failed to advise that the Lexus GX 460
SUV is less valuable and/or less functional than advertised, as it is
incapable of towing due to the unavailability of the Tow Hitch
Receiver;

d.  Plaintiff, like all Class Members, have been damaged by the unlawful
misconduct conducted by Toyota (and, in the case of the Subclass, by
all Defendants), including, without limitation, by receiving a vehicle
with a lesser market value than that of a vehicle with functional towing
capabilities;

e.  The factual basis and causes of action for the claims Plaintiff asserts on
behalf of Plaintiff and the Class are common to all Class Members and

represent a common thread of misconduct resulting in injury to all Class Members; and

    f.   The factual basis and causes of action for the claims Plaintiff asserts on behalf of Plaintiff and the Subclass are common to all Subclass members and represent a common thread of misconduct resulting in injury to all Subclass members.

111.  **Common Questions of Law and Fact and Predominance (as to the Class)**. Numerous questions of law and fact are common to Plaintiff and the Class Members within the meaning of Rule 23(a)(2), the answers to which are applicable class-wide, and these common questions predominate over any individual questions within the meaning of Rule 23(b)(3). Such common legal and factual questions include, but are not limited to, the following:

    a.   Whether the Lexus GX 460 SUVs purchased by Plaintiff and the Class Members were all advertised by Toyota as having significant towing capabilities;

    b.   Whether the Lexus GX 460 SUVs sold or leased by or on behalf of Toyota to the Class Members are incapable of towing due to the unavailability of the Tow Hitch Receiver, as further described herein;

c.  Whether the Lexus GX 460 SUVs sold or leased by or on behalf of Toyota to the Class Members are worth a lesser market value than that of vehicles with functional towing capabilities;

d.  When Toyota learned that the Lexus GX 460 line of SUVs are incapable of towing due to the unavailability of the Tow Hitch Receiver;

e.  Whether Toyota omitted relevant information regarding the Lexus GX 460 line of SUVs' incapability of towing due to the unavailability of the Tow Hitch Receiver from its communications with consumers prior to their purchases or leases;

f.  Whether and to what capacity Toyota is able to remedy the Lexus GX 460 line of SUVs' incapability of towing due to the unavailability of the Tow Hitch Receiver and whether such incapability results from a design or manufacturing defect;

g.  Whether Toyota has unjustly profited from the sale and/or lease of Lexus GX 460 line of SUVs due to the allegations alleged herein;

h.  Whether Toyota's actions described herein constitute an unfair and/or deceptive trade practice within the meaning of FDUTPA;

i.  Whether Toyota's actions described herein constitute a violation of the Magnuson-Moss Warranty Act;

j.  Whether Plaintiff and the Class are entitled to compensatory damages and/or restitution and/or disgorgement, and the amount of such damages based on Toyota's sale and/or lease of Lexus GX 460 SUVs that are incapable of towing due to the unavailability of the Tow Hitch Receiver;

k.  Whether injunctive and/or declaratory or other equitable relief is warranted under FDUTPA.

112.  **Common Questions of Law and Fact and Predominance (as to the Subclass)**. Numerous questions of law and fact are common to Plaintiff and the members of the Subclass within the meaning of Rule 23(a)(2), the answers to which are applicable to all members of the Subclass, and these common questions predominate over any individual questions within the meaning of Rule 23(b)(3). Such common legal and factual questions include, but are not limited to, the following:

a.  Whether the Lexus GX 460 SUVs purchased by Plaintiff and the members of the Subclass were all advertised by LMNO as having significant towing capabilities;

b.  Whether the Lexus GX 460 SUVs sold or leased by LMNO to the members of the Subclass are incapable of towing due to the unavailability of the Tow Hitch Receiver, as further described herein;

c.  Whether the Lexus GX 460 SUVs sold or leased by or on behalf of LMNO to the members of the Subclass are worth a lesser market value than that of SUVs with functional towing capabilities;

d.  When LMNO learned that the Lexus GX 460 line of SUVs are incapable of towing due to the unavailability of the Tow Hitch Receiver;

e.  Whether LMNO omitted relevant information regarding the Lexus GX 460 line of SUVs incapability of towing due to the unavailability of the Tow Hitch Receiver from its communications with members of the Subclass prior to their purchases or leases;

f.  Whether and to what capacity LMNO is able to remedy the Lexus GX 460 line of SUVs' incapability of towing due to the unavailability of the Tow Hitch Receiver and whether such incapability results from a design or manufacturing defect;

g.  Whether LMNO have unjustly profited from the sale and/or lease of Lexus GX 460 line of SUVs due to the allegations alleged herein;

h.  Whether LMNO's actions described herein constitute an unfair and/or deceptive trade practice within the meaning of FDUTPA;

i.  Whether LMNO's actions described herein constitute a violation of the Magnuson-Moss Warranty Act;

j.  Whether Plaintiff and the members of the Subclass are entitled to compensatory damages and/or restitution and/or disgorgement, and the amount of such damages based on LMNO's sale and/or lease of Lexus GX 460 SUVs that are incapable of towing due to the unavailability of the Tow Hitch Receiver;

k.  Whether injunctive and/or declaratory or other equitable relief is warranted under FDUTPA.

## CAUSES OF ACTION

### COUNT I
### Violation of the Florida Deceptive and Unfair Trade Practices Act
(against Toyota)
(on behalf of Plaintiff and all Class Members)

113.   Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

114.   Each Lexus GX 460 SUV purchased or leased by Plaintiff and the Class Members were/are considered "property" or "goods" pursuant to Fla. Stat. §501.203(8).

115.   By advertising, offering for sale, selling, leasing, soliciting, providing and/or distributing Lexus GX 460 SUVs purchased or leased by Plaintiff and the Class Members, Toyota has engaged and continues to engage in "trade" or "commerce" pursuant to Fla. Stat. § 501.203(8).

116.   Toyota knew or should have known that the Lexus GX 460 line of SUVs are incapable of towing due to the unavailability of the Tow Hitch Receiver and have likely known of this fact since at least October 18, 2021, if not earlier.

117.   Nevertheless, Toyota failed to inform Plaintiff and the Class about this fact prior to their respective purchases or leases of Lexus GX 460 SUVs.

118.   At a minimum, Toyota omitted material facts by not disclosing to Plaintiff and the Class prior to their purchases or leases that the Lexus GX 460 line of SUVs are incapable of towing due to the unavailability of the Tow Hitch Receiver.

119.   Such omission constituted Toyota's failure to disclose material facts that were known to Toyota, or that, upon reasonable inquiry, would be known to Toyota.

120.   In light of Toyota's knowledge that the Lexus GX 460 line of SUVs are incapable of towing due to the unavailability of the Tow Hitch Receiver, Toyota's marketing of Lexus GX 460 SUVs to Plaintiff and Class Members as tow-capable and selling and leasing the vehicles to Plaintiff and Class Members without disclosing they were not tow-capable constitutes unfair acts and/or an unfair practice in the conduct of trade or commerce.

121.   In light of Toyota's knowledge that Lexus GX 460 line of SUVs are incapable of towing due to the unavailability of the Tow Hitch Receiver, Toyota's marketing of Lexus GX 460 SUVs to Plaintiff and Class Members as tow-capable

and selling and leasing the vehicles to Plaintiff and Class Members without disclosing they were not tow-capable constitutes deceptive acts and/or a deceptive practice in the conduct of trade or commerce.

122.   As set forth above, Toyota engaged in, *inter alia*, the following unfair and/or deceptive trade practices in transactions with Plaintiff and Class Members in Florida which were intended to result in, and did result in, the sale and/or lease of Lexus GX 460 SUVs:

a.   Representing that such vehicles have characteristics, uses, and/or benefits that they do not have;

b.   Representing that such vehicles are of a particular standard, quality, or grade when they are of another; and

c.   Concealing, omitting, and/or suppressing material facts regarding such vehicles.

123.   The unfair and/or deceptive trade practices described herein was likely to deceive a reasonable consumer, as a reasonable consumer would believe the Lexus GX 460 SUV was tow-capable, especially in light of Toyota's advertisements.

124.   Moreover, the practices and acts described herein were substantially injurious, unethical, and unscrupulous, and/or they provided no countervailing benefit to other consumers, and Plaintiff and Class Members could not reasonably have avoided their injuries.

125.   As a direct and proximate result of the unfair and/or deceptive trade practices described herein, Plaintiff and the Class were damaged by paying for the purchase and/or lease of SUVs with significant towing capabilities without being told by Toyota prior to their respective purchase or lease that such SUVs were not incapable of towing, and instead receiving SUVs that incapable of towing and are therefore worth a lesser value.

126.   The market value of a vehicle as represented (*i.e.*, an SUV with significant tow capabilities) exceeds the market value of the vehicles that Plaintiff and Class Members actually received (*i.e.,* an SUV that is incapable of towing).

127.   Moreover, Plaintiff and Class Members have been aggrieved by the violations described herein and are therefore entitled to declaratory relief pursuant to § 501.211(1).

128.   Toyota continues to market, advertise, sell and/or lease Lexus GX 460 SUVs in the unfair manner described herein.

129.   As such, Plaintiff and Class Members are entitled to injunctive relief enjoining Toyota from continuing to misrepresent the capabilities of Lexus GX 460 SUVs and otherwise engage in the unfair and/or deceptive conduct described herein.

130.   In addition, Plaintiff and Class Members are entitled to the recovery of actual and other damages.

131.   Plaintiff and Class Members also seek injunctive relief in the form of a corrective advertising campaign and/or other corrective action.

**COUNT II**
**Violation of the Florida Deceptive and Unfair Trade Practices Act**
(against LMNO)
(on behalf of Plaintiff and all members of the Subclass)

132.   Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

133.   Each Lexus GX 460 SUV purchased or leased by Plaintiff and the members of the Subclass were/are considered "property" or "goods" pursuant to Fla. Stat. §501.203(8).

134.   By advertising, offering for sale, selling, leasing, solicitating, providing and/or distributing Lexus GX 460 SUVs purchased or leased by Plaintiff and the members of the Subclass, LMNO has engaged and continues to engage in "trade" or "commerce" pursuant to Fla. Stat. § 501.203(8).

135.   LMNO knew or should have known that the Lexus GX 460 line of SUVs are incapable of towing due to the unavailability of the Tow Hitch Receiver and have likely known of this fact since at least October 18, 2021, if not earlier.

136.   Nevertheless, LMNO failed to inform Plaintiff and the members of the Subclass about this fact prior to their respective purchases or leases of Lexus GX 460 SUVs.

137.    At a minimum, LMNO omitted material facts by not disclosing to Plaintiff and the members of the Subclass prior to their purchases or leases that the Lexus GX 460 line of SUVs are incapable of towing due to the unavailability of the Tow Hitch Receiver.

138.    Such omission constituted LMNO's failure to disclose material facts that were known to LMNO, or that, upon reasonable inquiry, would be known to LMNO.

139.    In light of LMNO's knowledge that Lexus GX 460 SUVs are incapable of towing due to the unavailability of the Tow Hitch Receiver, LMNO's marketing of Lexus GX 460 SUVs to Plaintiff and members of the Subclass as tow-capable and selling and leasing the SUVs to Plaintiff and members of the Subclass without disclosing they were not tow-capable constitutes unfair acts and/or an unfair practice in the conduct of trade or commerce.

140.    In light of LMNO's knowledge that Lexus GX 460 SUVs are incapable of towing due to the unavailability of the Tow Hitch Receiver, LMNO's marketing of Lexus GX 460 SUVs to Plaintiff and the members of the Subclass as tow-capable and selling and leasing the SUVs to Plaintiff and the members of the Subclass without disclosing they were not tow-capable constitutes deceptive acts and/or a deceptive practice in the conduct of trade or commerce.

141.   As set forth above, LMNO engaged in, inter alia, the following unfair and/or deceptive trade practices in transactions with Plaintiff and the members of the Subclass in Florida which were intended to result in, and did result in, the sale and/or lease of Lexus GX 460 SUVs:

a.   Representing that such vehicles have characteristics, uses, and/or benefits that they do not have;

b.   Representing that such vehicles are of a particular standard, quality, or grade when they are of another; and

c.   Concealing, omitting, and/or suppressing material facts regarding such vehicles.

142.   The unfair and/or deceptive trade practices described herein was likely to deceive a reasonable consumer, as a reasonable consumer would believe the Lexus GX 460 SUV had significant towing capabilities, especially in light of LMNO's marketing.

143.   Moreover, the practices and acts described herein were substantially injurious, unethical, and unscrupulous, and/or they provided no countervailing benefit to other consumers, and Plaintiff and the members of the Subclass could not reasonably have avoided their injuries.

144.   As a direct and proximate result of the unfair and/or deceptive trade practices described herein, Plaintiff and the members of the Subclass were damaged

by paying for the purchase and/or lease of SUVs with significant towing capabilities without being told by LMNO prior to their respective purchase or lease that such vehicles were not tow-capable, and instead receiving SUVs that are incapable of towing and are therefore worth a lesser value.

145.   The market value of a vehicle as represented (*i.e*., an SUV with significant tow capabilities) exceeds the market value of the vehicles that Plaintiff and members of the Subclass actually received (*i.e.,* an SUV that is incapable of towing).

146.   Moreover, Plaintiff and the members of the Subclass have been aggrieved by the violations described herein and are therefore entitled to declaratory relief pursuant to § 501.211(1).

147.   LMNO continues to market, advertise, sell and/or lease Lexus GX 460 SUVs in the unfair manner described herein.

148.   As such, Plaintiff and the members of the Subclass are entitled to injunctive relief enjoining LMNO from continuing to misrepresent the capabilities of Lexus GX 460 SUVs and otherwise engage in the unfair and/or deceptive conduct described herein.

149.   In addition, Plaintiff and the members of the Subclass are entitled to the recovery of actual and other damages.

150.   Plaintiff and the members of the Subclass also seek injunctive relief in the form of a corrective advertising campaign and/or other corrective action.

## COUNT III
## <u>Unjust Enrichment</u>
(against Toyota)
(on behalf of Plaintiff and all Class Members)

151.   Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

152.   Plaintiff and the Class members conferred a monetary benefit on Defendants when they paid for their respective purchase and/or lease of their Lexus GX 460 SUVs.

153.   Toyota knew or should have known that Lexus GX 460 SUVs are incapable of towing due to the unavailability of the Tow Hitch Receiver and have likely known of this fact since at least October 18, 2021, if not earlier.

154.   Toyota was therefore accepting money through Plaintiff's and Class Members' purchases or leases of SUVs that were incapable of towing due to the unavailability of the Tow Hitch Receiver.

155.   Nevertheless, Toyota failed to inform Plaintiff and the Class about this fact prior to their purchases or leases of their Lexus GX 460 SUVs.

156.   Under these circumstances, it is inequitable for Toyota to retain the benefit of Plaintiff's and Class Members' payments attributable to the SUVs that were incapable of towing due to the unavailability of the Tow Hitch Receiver.

157.   Toyota's acceptance and retention of these benefits under the circumstances make it inequitable for Toyota to retain these benefits without payment of the value to Plaintiff and the Class.

158.   As a result, Toyota is unjustly enriched at the expense of Plaintiff and the Class.

159.   Under principles of equity and good conscience, Toyota should not be permitted to retain the money belonging to Plaintiff and the Class that Toyota wrongfully collected based on its practice of selling or leasing SUVs that were incapable of towing due to the unavailability of the Tow Hitch Receiver.

160.   As a direct and proximate result of Toyota's wrongful conduct, Plaintiff and the Class have suffered an ascertainable loss of money by paying for SUVs with significant tow capabilities without being told by Toyota that such vehicles were actually incapable of towing, and instead received vehicles that are incapable of towing and are therefore worth a lesser value.

161.   As a direct and proximate result of Toyota's wrongful conduct and unjust enrichment, Plaintiff and the Class are entitled to full disgorgement and/or restitution of the amounts Toyota has retained as a result of the unlawful and/or wrongful conduct alleged herein.

**COUNT IV**
**Unjust Enrichment**
(against LMNO)
(on behalf of Plaintiff and all members of the Subclass)

162.   Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

163.   Plaintiff and the members of the Subclass conferred a monetary benefit on LMNO when they paid for their respective purchases and/or leases of their Lexus GX 460 SUVs.

164.   LMNO knew or should have known that Lexus GX 460 SUVs are incapable of towing due to the unavailability of the Tow Hitch Receiver and have likely known of this fact since at least October 18, 2021, if not earlier.

165.   LMNO was therefore accepting money through Plaintiff's and members of the Subclass's purchases or leases of SUVs that were incapable of towing due to the unavailability of the Tow Hitch Receiver.

166.   Nevertheless, LMNO failed to inform Plaintiff and the members of the Subclass about this fact prior to their purchases or leases of their Lexus GX 460 SUVs.

167.   Under these circumstances, it is inequitable for LMNO to retain the benefit of Plaintiff's and the members of the Subclass's payments attributable to the SUVs that were incapable of towing due to the unavailability of the Tow Hitch Receiver.

168. LMNO's acceptance and retention of these benefits under the circumstances make it inequitable for LMNO to retain these benefits without payment of the value to Plaintiff and the members of the Subclass.

169. As a result, LMNO is unjustly enriched at the expense of Plaintiff and the members of the Subclass.

170. Under principles of equity and good conscience, LMNO should not be permitted to retain the money belonging to Plaintiff and the members of the Subclass that LMNO wrongfully collected based on its practice of selling or leasing SUVs that were incapable of towing due to the unavailability of the Tow Hitch Receiver.

171. As a direct and proximate result of LMNO's wrongful conduct, Plaintiff and the Subclass have suffered an ascertainable loss of money by paying for SUVs with significant tow capabilities without being told by LMNO that such vehicles were actually incapable of towing, and instead receiving SUVs that are incapable of towing and are therefore worth a lesser value.

172. As a direct and proximate result of LMNO's wrongful conduct and unjust enrichment, Plaintiff and the members of the Subclass are entitled to full disgorgement and/or restitution of the amounts LMNO has retained as a result of the unlawful and/or wrongful conduct alleged herein.

**COUNT V**
**Fraudulent Misrepresentation**
(against Toyota)
(on behalf of Plaintiff and all Class Members)

173.   Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

174.   At all times material hereto, the employees, agents, and/or representatives of Toyota were acting in the scope of their agency and/or employment under Toyota and for the benefit of Toyota.

175.   As further alleged herein, Toyota knowingly engaged in a scheme to defraud potential purchasers and/or lessees of Lexus GX 460 SUVs by representing Lexus GX 460 SUVs as having significant tow capabilities, when it knew Lexus GX 460 SUVs were incapable of towing due to the unavailability of the Tow Hitch Receiver.

176.   In furtherance of such scheme, Toyota, through its employees, agents, and/or representatives, made material and false statements and representations, including, without limitation, that Lexus GX 460 SUVs have significant tow capabilities.

177.   At the time such material statements and representations were made, Toyota, through its employees, agents, and/or representatives, knew that such material statements and representations were false.

178.   Toyota, through its employees, agents, and/or representatives, intended on Plaintiff and the Class to rely and act on such material and false statements and representations.

179.   At the time of their applicable purchase and/or lease, Plaintiff and the Class did not know that such statements and representations were false.

180.   Plaintiff and the Class justifiably relied on such statements and representations, to their detriment.

181.   As a direct and proximate result of Toyota's material and false statements and representations, Plaintiff and the Class have sustained injury and damage, as further alleged herein.

### COUNT VI
### **Fraudulent Misrepresentation**
(against LMNO)
(on behalf of Plaintiff and all members of the Subclass)

182.   Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

183.   At all times material hereto, the employees, agents, and/or representatives of LMNO were acting in the scope of their agency and/or employment under LMNO and for the benefit of LMNO.

184.   As further alleged herein, LMNO knowingly engaged in a scheme to defraud potential purchasers and/or lessees of Lexus GX 460 SUVs by representing Lexus GX 460 SUVs as having significant tow capabilities, when it knew Lexus GX

460 SUVs were incapable of towing due to the unavailability of the Tow Hitch Receiver.

185.   In furtherance of such scheme, LMNO, through its employees, agents, and/or representatives, made material and false statements and representations, including, without limitation, that Lexus GX 460 SUVs have significant tow capabilities.

186.   At the time such material statements and representations were made, LMNO, through its employees, agents, and/or representatives, knew that such material statements and representations were false.

187.   LMNO, through its employees, agents, and/or representatives, intended on Plaintiff and the members of the Subclass to rely and act on such material and false statements and representations.

188.   At the time of their applicable purchase and/or lease, Plaintiff and the members of the Subclass did not know that such statements and representations were false.

189.   Plaintiff and the members of the Subclass justifiably relied on such statements and representations, to their detriment.

190.   As a direct and proximate result of LMNO's material and false statements and representations, Plaintiff and the members of the Subclass have sustained injury and damage, as further alleged herein.

## COUNT VII
## <u>Negligent Misrepresentation</u>
(against Toyota)
(on behalf of Plaintiff and all Class Members)

191.   Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

192.   At all times material hereto, the employees, agents, and/or representatives of Toyota were acting in the scope of their agency and/or employment under Toyota and for the benefit of Toyota.

193.   As further alleged herein, Toyota, by way of its employees, agents, and/or representatives, represented to Plaintiff and the Class Members that Lexus GX 460 SUVs had significant tow capabilities.

194.   Such representations were material.

195.   However, Toyota should have known that such representations were false, as the Lexus GX 460 SUVs were incapable of towing due to the unavailability of the Tow Hitch Receiver.

196.   Toyota, by way of its employees, agents, and/or representatives, made such representations intending and/or expecting Plaintiff and the Class Members to rely on them.

197.   Indeed, Plaintiff and the Class Members did rely on such representations when leasing and/or purchasing their respective Lexus GX 460 SUVs, to their detriment.

198.   At the time of their applicable purchase and/or lease, Plaintiff and the Class Members did not know that such representations were false.

199.   As a direct and proximate result of Toyota's material and false statements and representations, Plaintiff and the Class have sustained injury and damage, as further alleged herein.

**COUNT VIII**
**Negligent Misrepresentation**
(against LMNO)
(on behalf of Plaintiff and all members of the Subclass)

200.   Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

201.   At all times material hereto, the employees, agents, and/or representatives of LMNO were acting in the scope of their agency and/or employment under LMNO and for the benefit of LMNO.

202.   As further alleged herein, LMNO, by way of its employees, agents, and/or representatives, represented to Plaintiff and the members of the Subclass that Lexus GX 460 SUVSs had significant tow capabilities.

203.   Such representations were material.

204.   However, LMNO should have known that such representations were false, as the Lexus GX 460 SUVs were incapable of towing due to the unavailability of the Tow Hitch Receiver.

205.   LMNO, by way of its employees, agents, and/or representatives, made such representations intending and/or expecting Plaintiff and the members of the Subclass to rely on them.

206.   Indeed, Plaintiff and the members of the Subclass did rely on such representations when leasing and/or purchasing their respective Lexus GX 460 SUVs, to their detriment.

207.   At the time of their applicable purchase and/or lease, Plaintiff and the members of the Subclass did not know that such representations were false.

208.   As a direct and proximate result of LMNO's material and false statements and representations, Plaintiff and the members of the Subclass have sustained injury and damage, as further alleged herein.

## COUNT IX
## Violation of Misleading Advertising Statute (§ 817.41, Fla. Stat.)
(against Toyota)
(on behalf of Plaintiff and all Class Members)

209.   Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

210.   At all times relevant, Toyota was engaged in advertising and promoting the line of Lexus GX 460 SUVs as having a significant tow capabilities, and thus, being capable of towing.

211.   At the same time, Toyota knew or should have known that the Lexus GX 460 line of SUVs are incapable of towing due to the unavailability of the Tow

Hitch Receiver and have likely known of this fact since at least October 18, 2021, if not earlier.

212.   In response to and in reliance on these advertisements, Plaintiff and the Class Members purchased and/or leased a Lexus GX 460 SUV.

213.   Only after Plaintiff and the Class Members purchased and/or leased a Lexus GX 460 SUV did Toyota make known to Plaintiff and the Class Members, by way of its representatives, that the Lexus GX 460 SUVs purchased or leased by Plaintiff and the Class Members are incapable of towing due to the unavailability of the Tow Hitch Receiver.

214.   Toyota knew that the fact that Lexus GX 460 SUVs are incapable of towing due to the unavailability of the Tow Hitch Receiver would prevent potential consumers from purchasing or leasing Lexus GX 460 SUVs.

215.   Accordingly, Toyota intentionally and purposely withheld this information from potential customers (including Plaintiff and the Class Members) until after the sale of the respective Lexus GX 460 SUVs were complete.

216.   By relying on, and as a direct and proximate result of, the misleading advertising, Plaintiff and the Class have sustained injury and damage, as further alleged herein.

**COUNT X**
**Violation of Misleading Advertising Statute (§ 817.41, Fla. Stat.)**
(against LMNO)
(on behalf of Plaintiff and all members of the Subclass)

217.   Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

218.   At all times relevant, LMNO was engaged in advertising and promoting the line of Lexus GX 460 SUVs as having a significant tow capabilities, and thus, being capable of towing.

219.   At the same time, LMNO knew or should have known that the Lexus GX 460 line of SUVs are incapable of towing due to the unavailability of the Tow Hitch Receiver and have likely known of this fact since at least October 18, 2021, if not earlier.

220.   In response to and in reliance on these advertisements, Plaintiff and the members of the Subclass purchased and/or leased a Lexus GX 460 SUVs.

221.   Only after Plaintiff and the members of the Subclass purchased and/or leased a Lexus GX 460 SUV did LMNO make known to Plaintiff and the members of the Subclass, by way of its representatives, that the Lexus GX 460 SUVs purchased or leased by Plaintiff and the members of the Subclass are incapable of towing due to the unavailability of the Tow Hitch Receiver.

222.   LMNO knew that the fact that Lexus GX 460 SUVs are incapable of towing due to the unavailability of the Tow Hitch Receiver would prevent potential consumers from purchasing or leasing Lexus GX 460 SUVs.

223.   Accordingly, LMNO intentionally and purposely withheld this information from potential customers (including Plaintiff and the Class Members) until after the sale of the respective Lexus GX 460 SUVs were complete.

224.   By relying on, and as a direct and proximate result of, the misleading advertising, Plaintiff and the members of the Subclass have sustained injury and damage, as further alleged herein.

## COUNT XI
### Breach of Implied Warranty of Fitness for Particular Purpose
(against LMNO)
(on behalf of Plaintiff and all members of the Subclass)

225.   Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

226.   LMNO, by way of its employees, agents, and/or representatives, represented to Plaintiff and the members of the Subclass that the Lexus GX 460 SUVs were suitable to be used for towing.

227.   At the time that Plaintiff and the members of the Subclass purchased and/or leased their respective Lexus GX 460 SUVs from LMNO, Plaintiff and the members of the Subclass informed LMNO that the Lexus GX 460 SUVs to be purchased and/or leased were intended to be used for, without limitation, towing,

and it was made clear that Plaintiff and the members of the Subclass were relying on the skill and judgment of LMNO, by way of their respective employees, agents, and/or representatives, in selecting a product suitable for that purpose.

228.   In purchasing their respective Lexus GX 460 SUVs from LMNO, as described above, Plaintiff and the members of the Subclass relied on the skill and judgment of LMNO, by way of their respective employees, agents, and/or representatives, in selecting a vehicle suitable for towing.

229.   As a result of the matters alleged above, LMNO warranted by implication that the Lexus GX 460 SUVs would be suitable for towing.

230.   LMNO breached the implied warranty of fitness described above in that the Lexus GX 460 SUVs purchased and/or leased by Plaintiff and the members of the Subclass are incapable of towing due to the unavailability of the Tow Hitch Receiver.

231.   As a direct and proximate result of LMNO's breach of the implied warranty described above, Plaintiff and the members of the Subclass have sustained injury and damage, as further alleged herein.

**COUNT XII**
**Breach of Implied Warranty of Merchantability**
(against Toyota)
(on behalf of Plaintiff and all Class Members)

232.   Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

233.   The respective purchases and/or leases of the Lexus GX 460 SUVs purchased and/or leased by Plaintiff and the Class Members were accompanied by warranties, both express and implied, including Toyota's implied warranty of merchantability.

234.   The implied warranty of merchantability that accompanied such respective purchases and/or leases of the Lexus GX 460 SUVs means that the Lexus GX 460 SUVs will comply with each of the following requirements: (1) they would pass without objection in the trade under the contract description; (2) they are fit for the ordinary purposes for which such goods are used; (3) they are adequately contained, packaged, and labeled; and (4) they conform to the promises or affirmations of fact made on the container or label.

235.   Because the purchased and/or leased Lexus GX 460 SUVs are incapable of towing due to the unavailability of the Tow Hitch Receiver, the vehicles (1) would not and will not pass without objection in the trade under the contract description, (2) were and are not fit for the ordinary purposes for which such goods are used, (3) were not adequately contained, packaged, and labeled, and (4) did not conform to the promises or affirmations of fact made on their containers or labels.

236.   Accordingly, Toyota has breached the implied warranty of merchantability.

237.   As a direct and proximate result of Toyota's breach of the implied warranty of merchantability, Plaintiff and the Class have sustained injury and damage, as further alleged herein.

## COUNT XIII
## Breach of Implied Warranty of Merchantability
(against LMNO)
(on behalf of Plaintiff and all members of the Subclass)

238.   Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

239.   The respective purchases and/or leases of the Lexus GX 460 SUVs purchased and/or leased by Plaintiff and the members of the Subclass were accompanied by warranties, both express and implied, including LMNO's implied warranty of merchantability.

240.   The implied warranty of merchantability that accompanied such respective purchases and/or leases of the Lexus GX 460 SUVs means that the Lexus GX 460 SUVs will comply with each of the following requirements: (1) they would pass without objection in the trade under the contract description; (2) they are fit for the ordinary purposes for which such goods are used; (3) they are adequately contained, packaged, and labeled; and (4) they conform to the promises or affirmations of fact made on the container or label.

241.   Because the purchased and/or leased Lexus GX 460 SUVs are incapable of towing due to the unavailability of the Tow Hitch Receiver, the vehicles

(1) would not and will not pass without objection in the trade under the contract description, (2) were and are not fit for the ordinary purposes for which such goods are used, (3) were not adequately contained, packaged, and labeled, and (4) did not conform to the promises or affirmations of fact made on their containers or labels.

242.   Accordingly, LMNO has breached the implied warranty of merchantability.

243.   As a direct and proximate result of LMNO's breach of the implied warranty of merchantability, Plaintiff and the members of the Subclass have sustained injury and damage, as further alleged herein.

**COUNT XIV**
**<u>Breach of Express Warranty</u>**
(against Toyota)
(on behalf of Plaintiff and all Class Members)

244.   Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

245.   The respective purchases and/or leases of the Lexus GX 460 SUVs purchased and/or leased by Plaintiff and the Class Members were accompanied by warranties, both expressly written and implied.

246.   Toyota was the warrantor under the terms and conditions of such express warranties, which are hereby incorporated herein.

247.   Under such warranties, Toyota undertook to preserve and maintain the utility and performance of the vehicles purchased and/or leased by Plaintiff and the

Class Members and/or provide compensation in the event of a failure in utility or performance.

248.   The Lexus GX 460 SUVs purchased and/or leased by Plaintiff and the Class Members have failed in utility or performance and are defective, in that they are incapable of towing due to the unavailability of the Tow Hitch Receiver.

249.   Plaintiff has presented the purchased Lexus SUV to Toyota's authorized dealerships and repair facilities to repair the defect.

250.   Further, Toyota knows or should know that the Lexus GX 460 line of SUVs are incapable of towing due to the unavailability of the Tow Hitch Receiver and have likely known of this fact since at least October 18, 2021, if not earlier.

251.   Thus, Toyota is aware and has actual and/or constructive notice that the SUVs purchased and/or leased by Plaintiff and the Class Members suffer from the referenced defect.

252.   Nevertheless, Toyota has failed to repair the defect or offer Plaintiff or the Class Members any restitution for the defect.

253.   Thus, Toyota failed to conform the Lexus GX 460 SUVs purchased and/or leased by Plaintiff and the Class Members to the applicable express warranties.

254.   Accordingly, Toyota has breached the applicable express warranties.

255.   As a direct and proximate result of Toyota's breach of the applicable express warranties, Plaintiff and the Class have sustained injury and damage, as further alleged herein.

## COUNT XV
## Violation of the Magnuson-Moss Warranty Act (15 U.S.C. §2301 *et seq.*)
(against Toyota)
(on behalf of Plaintiff and all Class Members)

256.   Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

257.   Plaintiff and each of the Class Members are each a "consumer" as defined by 15 U.S.C. §2301(3).

258.   Toyota is a "warrantor" as defined by 15 U.S.C. §2301(5).

259.   The Lexus GX 460 SUVs purchased and/or leased by Plaintiff and the Class Members were each a "consumer product" under 15 U.S.C. §2301(1), as they were each tangible personal property which is distributed in commerce and which is normally used in for personal, family, or household purposes.

260.   The respective purchases and/or leases of the Lexus GX 460 SUVs purchased and/or leased by Plaintiff and the Class Members were accompanied by warranties, both expressly written and implied.

261.   Plaintiff and each of the Class Members are entitled to enforce the terms such express and implied warranties.

262.    Toyota was the warrantor under the terms and conditions of such express and implied warranties, the terms of which are expressly incorporated herein.

263.    The Lexus GX 460 SUVs purchased and/or leased by Plaintiff and the Class Members are defective, in that they are incapable of towing due to the unavailability of the Tow Hitch Receiver.

264.    Toyota has failed to remedy the defect within a reasonable time (*i.e.*, at all) to conform the Lexus GX 460 vehicles purchased and/or leased by Plaintiff and the Class Members to all applicable implied and express warranties.

265.    In addition, when granting the applicable warranties to Plaintiff and the Class Members, Toyota knew (or should have known) that the warranties would be ineffective to cure the defect within a reasonable time due to the unavailability of the Tow Hitch Receiver.

266.    Thus, because Toyota had no intention of providing warranty coverage to cure the defect and/or knew or should have known that they were unable to provide warranty coverage to cure the defect, the terms and conditions of the applicable warranties granted by Toyota was deceptive and/or misleading.

267.    The Magnuson-Moss Warranty Act enhances state law warranty rights as to representations made to consumers and performance under a warranty or warranty implied-by law.

268.   Thus, as a result of Toyota's wrongful conduct as further alleged herein, Toyota has violated the Magnuson-Moss Warranty Act.

269.   As a direct and proximate result of Toyota's wrongful conduct as alleged herein, Plaintiff and the Class have sustained injury and damage, as further alleged herein, and are entitled to the recovery of such damages and their attorneys' fees, costs, and expenses, in accordance with, without limitation, 15 U.S.C. §2310(d)(1).

## COUNT XVI
## Violation of the Magnuson-Moss Warranty Act (15 U.S.C. §2301 *et seq.*)
(against LMNO)
(on behalf of Plaintiff and all members of the Subclass)

270.   Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

271.   Plaintiff and each of the members of the Subclass are each a "consumer" as defined by 15 U.S.C. §2301(3).

272.   LMNO is a "warrantor" as defined by 15 U.S.C. §2301(5).

273.   The Lexus GX 460 SUVs purchased and/or leased by Plaintiff and the members of the Subclass were each a "consumer product" under 15 U.S.C. §2301(1), as they were each tangible personal property which is distributed in commerce and which is normally used in for personal, family, or household purposes.

274.   The respective purchases and/or leases of the Lexus GX 460 SUVs purchased and/or leased by Plaintiff and the members of the Subclass were accompanied by warranties, both expressly written and implied.

275.   Plaintiff and each of the members of the Subclass are entitled to enforce the terms such express and implied warranties.

276.   LMNO was the warrantor under the terms and conditions of such implied warranties, including, without limitation, the implied warranty of merchantability and the implied warranty of fitness for particular purpose.

277.   The Lexus GX 460 SUVs purchased and/or leased by Plaintiff and the members of the Subclass are defective, in that they are incapable of towing due to the unavailability of the Tow Hitch Receiver.

278.   LMNO has failed to remedy the defect within a reasonable time (*i.e*., at all) to conform the Lexus GX 460 SUVs purchased and/or leased by Plaintiff and the members of the Subclass to all applicable implied warranties.

279.   In addition, when granting the applicable warranties to Plaintiff and the members of the Subclass, LMNO knew (or should have known) that the warranties would be ineffective to cure the defect within a reasonable time due to the unavailability of the Tow Hitch Receiver.

280.   Thus, because LMNO had no intention of providing warranty coverage to cure the defect and/or knew or should have known that they were unable to

provide warranty coverage to cure the defect, the terms and conditions of the applicable warranties granted by LMNO was deceptive and/or misleading.

281.   The Magnuson-Moss Warranty Act enhances state law warranty rights as to representations made to consumers and performance under a warranty or warranty implied-by law.

282.   Thus, as a result of LMNO's wrongful conduct as further alleged herein, LMNO has violated the Magnuson-Moss Warranty Act.

283.   As a direct and proximate result of LMNO's wrongful conduct as alleged herein, Plaintiff and the members of the Subclass have sustained injury and damage, as further alleged herein, and are entitled to the recovery of such damages and their attorneys' fees, costs, and expenses, in accordance with, without limitation, 15 U.S.C. §2310(d)(1).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class (including, without limitation, the members of the Subclass), respectfully demands the following relief:

A.   Certification of the Class and Subclass pursuant Federal Rule 23;

B.   Appointment of Plaintiff as the representative for the Class and the Subclass and Plaintiff's attorneys as Class Counsel for both the Class and Subclass;

C.     Awarding Plaintiff, the Class, and the Subclass compensatory damages, in an amount to be proved at trial;

D.     Awarding Plaintiff, the Class, and the Subclass punitive damages, in an amount to be proved at trial;

E.     Awarding Plaintiff, the Class, and the Subclass injunctive relief as permitted by law or equity, including, but not limited to, enjoining Defendants from continuing the unlawful practices as set forth herein, ordering Defendants to engage in a corrective advertising campaign, and ordering Defendants to take other corrective action as determined necessary;

F.     Awarding pre-judgment and post-judgment interest;

G.     Awarding attorneys' fees and costs; and

H.     Providing such further relief as may be just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

Dated*:* January 6, 2023

**SFT LEGAL SERVICES P.A.**

*/s/ Yosef Steinmetz*
Yosef Steinmetz, Bar No. 119968
4014 Chase Avenue
Suite 220
Miami Beach, FL 33140
T: (786) 368-5617
yosef@sftlegal.net

*Attorney for Plaintiff Lucas Velez*

61